UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

   - against -

KAISON GILLESPIE,

                    Defendant.

------------------------------------X

12 Cr. 671 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

On April 25, 2013, Kaison Gillespie, ("Defendant" or "Gillespie") pled guilty to Count 2: Attempted Hobbs Act Robbery, in violation of 18 U.S.C. § 1951, a Class C felony. For the reasons set forth below, Gillespie will be sentenced to a term of 57 months' imprisonment to be followed by three years' supervised release. Defendant will also be required to pay a special assessment of $100.

**Prior Proceedings**

On August 29, 2013, Gillespie was named in a three-count Indictment 12 CR 671 (RWS) in the Southern District of New York. Count 1 charges that from at least

1

July 2012 through August 1, 2012, in the Southern District of New York and elsewhere, co-defendant Julius C. Barnes ("Barnes"), co-Defendant Kean Chambers ("Chambers"), co-defendant Brian Stubbs ("Stubbs"), Gillespie, and others, agreed to commit an armed robbery of people suspected of possessing narcotics and cash in an apartment in New York, NY. Count 2 charges that on August 1, 2012, in the Southern District of New York and elsewhere, Barnes, Chambers, Stubbs, Gillespie and others, participated in the attempted armed robbery of people suspected of possessing narcotics and cash in an apartment in New York, NY. Count 3 charges that on August 1, 2012, in the Southern District of New York and elsewhere, Barnes, Chambers, Stubbs and Gillespie, during and in relation to the attempted robbery charged in Count 2, possessed and carried a firearm in furtherance of that crime.

On April 25, 2013, Gillespie pled guilty to Count 2 Indictment 12 CR 671 (RWS) only.

Gillespie's sentencing is scheduled for December 10, 2013.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

- (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

- (2) the need for the sentence imposed —

    - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    - (B) to afford adequate deterrence to criminal conduct;

    - (C) to protect the public from further crimes of the defendant; and

    - (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

- (3) the kinds of sentences available;

- (4) the kinds of sentence and the sentencing range established for —

>       (A) the applicable category of offense
>           committed by the applicable category of
>           defendant as set forth in the
>           guidelines . . .;
>
>   (5) any pertinent policy statement . . .
>       [issued by the Sentencing Commission];
>
>   (6) the need to avoid unwarranted sentence
>       disparities among defendants with
>       similar records who have been found
>       guilty of similar conduct; and
>
>   (7) the need to provide restitution to any
>       victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Gillespie's personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set

4

forth in that document.

In late June 2012, a confidential source ("CS-1") spoke to co-defendant Julius C. Barnes ("Barnes") about a potential robbery of cocaine shipments that would be arriving in Manhattan from Colombia. On July 2, 2012, CS-1, another confidential source ("CS-2") and Barnes, met on a street in Manhattan. CS-2 was equipped with a video-and-audio-recording device during this meeting. Based on the review of the video and audio recording made by CS-2, it was discovered that CS-1 told Barnes that CS-2 was expecting a multi-kilogram shipment of cocaine from Colombia. CS-2 told Barnes that when the cocaine arrived, CS-2 would meet an unknown individual at a location in Manhattan to receive the drugs and arrange the sale of the drugs to another party for approximately $300,000.

Barnes told CS-2 to call him when the cocaine arrived, and then Barnes and his associates would come to the location and steal the drugs and money by force. Barnes explained that he would commit the robbery with his brother and/or cousin; Barnes agreed to split the stolen money with CS-2 immediately following the robbery. Barnes also asked CS-2, "Is it a problem if the people in the house die?"

5

Barnes stated that he used to commit drug robberies, but that Barnes' main business now was selling kilograms of cocaine. Barnes explained that he would meet CS-2 immediately after the robbery and show CS-2 the stolen kilograms of cocaine. Barnes agreed to give CS-2 a percentage of the profit made from the sale of each kilogram of stolen cocaine.

On August 1, 2012, at approximately 8:15 p.m., CS-2 again met Barnes, in the vicinity of W. 207th Street and Seaman Avenue in Manhattan. Law enforcement officers surveilled this meeting and observed Barnes arrive on foot. During this meeting, CS-2 informed Barnes that that the robbery would take place at a building in the area where they were meeting (the "Location"). CS-2 told Barnes to follow CS-2 to the Location. After this meeting, other law enforcement officers observed Barnes leave the meeting with CS-2 and enter a van (the "Van") located in the vicinity of Isham Street and Seaman Avenue in Manhattan.

CS-2 and Barnes arrived at the Location. A marked NYPD vehicle then arrived at the Location and pulled in front of the Van, at which point four males jumped out of

6

the Van and ran away from the Location. Law enforcement officers chased the four males and ultimately apprehended and arrested them. The four males were subsequently identified as Barnes, Chambers, Stubbs and the Defendant.

Upon a search of the Van, the following items were recovered: a loaded .45 caliber Hi-Point handgun; a loaded .22 caliber revolver; a loaded 9mm caliber Ruger handgun with a defaced serial number; two bulletproof vests; bleach; ammonia; latex gloves; zip ties; duct tape; an ASP baton; and a riding crop.

After waiving his Miranda rights, Chambers stated to law enforcement agents that on August 1, 2012, his cousin, Gillespie, Barnes and Stubbs agreed to meet in the Bronx, NY. Chambers agreed to attend that meeting as well.

Barnes, Gillespie, Stubbs and Chambers drove to meet CS-2 on August 1, 2012. On their way to meet CS-2, Barnes stopped at a store to buy bleach and ammonia. When Barnes, Gillespie, Stubbs and Chambers arrived at the Location in the Van and observed the NYPD vehicle, Gillespie yelled, "Run, fucking run, don't get caught with anything."

Barnes, Gillespie, Stubbs and Chambers were arrested on August 1, 2012. There are no applicable role adjustments. As the robbery was a jointly undertaken activity between Barnes, Stubbs and Gillespie, and because firearms were an element of the offense, only Barnes, Stubbs and Gillespie are responsible for the possession of the firearms. Chambers was unaware of the fact that the others were planning a robbery of drugs or that they possessed firearms.

**The Relevant Statutory Provisions**

For Count 2, the maximum term of imprisonment is 20 years, pursuant to 18 U.S.C. § 1951.

For Count 2, if a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

For Count 2, the Defendant is eligible for not less than one nor more than five years' probation by statute, pursuant to 18 U.S.C. § 3561(c)(1). Because the

offense is a felony, one of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service, pursuant to 18 U.S.C. § 3563(a)(2).

For Count 2, the maximum fine is $250,000, pursuant to 18 U.S.C. § 3571. A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2013 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to the Defendant's applicable offense level, criminal history, recognition of responsibility and term of imprisonment:

Count 2 charges Defendant with Attempted Hobbs Act Robbery, a violation of 18 U.S.C. § 1951. The Guideline for a violation of 18 USC 1951 is § 2B3.1, which provides for a base offense level of 20, pursuant to § 2B3.1(a).

Because a dangerous weapon was possessed during instant offense, the offense level is increased by three levels pursuant to § 2B3.1(b)(2).

Pursuant to § 2B3.1(b)(6), a one-level increase in the offense level is warranted because the taking of a controlled substance was the object of the offense.

Based on the Defendant's statement and allocution before the Court, we believe that he has shown recognition of responsibility for the offense. Because of the Defendant's timely notification of his intention to plead guilty, thus allowing the Government to allocate its resources more efficiently, and because the aforementioned base offense level is 16 or greater, pursuant to § 3E1.1(a) and (b), the offense level is reduced three levels.

According to the PSR, the total offense level is 21.

As outlined below, the Defendant has two juvenile and one adult criminal convictions.

On April 15, 1998, the Defendant was sentenced

for Burglary in the Third Degree in the Bronx Family Court in Bronx, NY. Defendant was adjudicated as a juvenile offender and sentenced to one year probation. On April 14, 1999, the Defendant was discharged from probation. According to the NYPD arrest report unit, this case is sealed with no further details provided. Pursuant to § 4A1.2(d), this conviction warrants zero criminal history points.

On March 16, 1999, the Defendant was sentenced for Criminal Possession of a Controlled Substance in the Third Degree in the Bronx Family Court in Bronx, NY. Defendant was adjudicated as a juvenile delinquent. According to the NYPD arrest report unit, this case is sealed with no further details provided. Pursuant to § 4A1.2(d), this conviction warrants zero criminal history points.

On March 2, 2002, the Defendant was sentenced for Murder in the Bronx County Supreme Court in Bronx, NY. The Defendant was sentenced to 5 years' to life imprisonment and lifetime parole. On April 1, 2010, the Defendant was paroled. According to the NYPD's arrest report, on January 13, 2001, at 10:00 p.m., in front of 711 Magenta, Bronx,

11

NY, the Defendant shot a victim in the face one time causing his death. The Defendant was arrested on June 15, 2001, at 7:30 p.m., at the 47th police precinct, located at 4111 Laconia Avenue, Bronx, NY. Pursuant to § 4A1.1(a) and § 4A1.2(d)(1), this conviction warrants three criminal history points.

At the time the instant offense was committed, the Defendant was on parole. Pursuant to § 4A1.1(d), two points are added.

The total of the criminal history points is five. According to the sentencing table at Chapter 5, Part A, five criminal history points establishes a Criminal History Category of III.

Based on a total offense level of 21 and a Criminal History Category of III, the Guideline range for imprisonment is 46 to 57 months.

The Guideline range for a term of supervised release is at least one but not more than three years, pursuant to § 5D1.2(a)(2). If a sentence of imprisonment of one year or less is imposed, a term of supervised release

is not required but is optional, pursuant to § 5D1.1(b). Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute, pursuant to § 5D1.1(a).

Because the applicable Guideline range is in Zone D of the Sentencing Table, the Defendant is not eligible for probation, pursuant to § 5B1.1, application note #2.

The fine range for the instant offense is from $7,500 to $75,000, pursuant to § 5E1.2(c)(3)(A) and (c)(4). Subject to the Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to §5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,412.33 to be used for imprisonment, a monthly cost of $278.95 for supervision, and a monthly cost of $2,244.17 for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors

13

identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Sentence**

For Count 2, Gillespie will be sentenced to 57 months' imprisonment to be followed by 3 years' supervised release.

As mandatory conditions of his supervised release: (1) the Defendant shall not commit another federal, state or local crime; (2) the Defendant shall not illegally possess a controlled substance; (3) the Defendant shall not possess a firearm or destructive device; (4) the

14

Defendant shall refrain from any unlawful use of a controlled substance and shall submit to one drug test within fifteen (15) days of placement on probation or supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer; and (5) the Defendant shall cooperate in the collection of DNA as directed by the probation officer.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) The Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

(2) The Defendant shall submit his person, residence, place of business, vehicle or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. The Defendant shall inform any other residents that the premises may be subject

to search pursuant to this condition.

The Defendant is to report to the nearest Probation Office within 72 hours of release from custody. It is recommended that the Defendant be supervised by the district of his residence.

It does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

It is further ordered that the Defendant shall pay to the United States a special assessment of $100, which shall be due immediately.

The Defendant has been detained without bail since his arrest. He is not a candidate for voluntary surrender because of the provisions found in 18 U.S.C. § 3143(a)(2).

The terms of this sentence are subject to modification at the sentencing hearing scheduled for December 10, 2013.

It is so ordered.

**New York, NY**
**December 6, 2013**

_____
ROBERT W. SWEET
U.S.D.J.

17